IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| RAMONA MILLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 04-4198-CV-C-NKL |
| | ) | |
| JOHN PAGE, | ) | |
| BART SIMMS, | ) | |
| CHRIS MOEHLE, | ) | |
| STEVE WEST, | ) | |
| THOM GUMM, and | ) | |
| CAMDEN COUNTY, MISSOURI, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

Pending before the Court are two dispositive motions filed by Defendants for partial summary judgment. The first dispositive motion was filed by Camden County, Missouri ("Camden County"), Steve West ("West"), and Thom Gumm ("Gumm") (collectively "Camden County Defendants") [Doc. # 55]. For the reasons set forth below, the Court grants the Motion filed by the Camden County Defendants.

The second dispositive motion was filed by John Page ("Page"), Bart Simms ("Simms"), and Chris Moehle ("Moehle") (collectively "Individual Defendants") [Doc. # 54]. For the reasons set forth below, the Court grants in part the Motion filed by the Individual Defendants.

**I.      Background**

1

Plaintiff Ramona Miller's ("Miller") claims against Defendants derive from her arrest that occurred on August 28, 2002. Page was the Sheriff of Camden County at the time of Miller's arrest while Simms and Moehle were the deputies who arrested her. West and Gumm were commissioners of Camden County at the time.[1]

### A. Pre-Arrest Facts

Miller is a physician who treated an inmate in the Camden County Jail named William Mason ("Mason"). Miller treated Mason during his incarceration in the spring of 2001. After one of her consultations with Mason, Miller advised the Jail that Mason should be transferred for emergency care out of the Camden County Jail. Miller also supported Mason in his habeas corpus proceedings wherein she averred that he was not receiving adequate medical care.

In her Complaint, Miller alleges Defendants retaliated against her because she aided Mason in his medical needs and supported his habeas corpus proceedings. Nancy Burge ("Burge"), a deputy with the Camden County Sheriff's Department, testified that she saw blown up posters of Miller's driver's license photograph around the Sheriff's office. Burge also testified that she heard Simms make fun of Miller and make the comment, "She better hope she does not come through the county when I am on duty."

On May 2, 2001, it is undisputed that a Camden County Sheriff's patrol car

---

[1]Carolyn Loraine was also a Camden County Commissioner who was initially sued by Miller, but Miller dismissed her claims against Loraine because she was not serving on the Commission in August 2002. *See* Pl. Motion to Dismiss [Doc. # 14] and accompanying Order [Doc. # 16]. Thus, only two Commissioners are named as defendants in the instant case.

approached Miller's vehicle from the rear and then passed Miller's vehicle as she was traveling on Highway 5. After the patrol car passed her, Miller observed that the patrol car had stopped another vehicle further down the road.

At another point in 2001, Miller alleges that a Camden County Sheriff's vehicle followed her on a two-lane highway until the vehicle driven by the officer made a u-turn on the highway.

During the winter of 2001, Simms had pulled over Miller's vehicle during a patrol for intoxicated drivers on Highway 5. Simms did not smell alcohol on Miller's breath and it is undisputed that he did not give Miller a ticket or harm her in any way.

Miller avers that these three interactions with Camden County Sheriff's officers demonstrate a pattern of harassment that support her underlying claim. She does not allege that these incidents individually rise to the level of a violation of her constitutional rights.

## B.  Traffic Stop and Arrest

### 1.  Overview

On August 28, 2002, a week night, Miller was driving northbound on Highway 5 at approximately 1:00 a.m. after completing her shift. Moehle was on duty patrolling Highway 5, which is a frequent route for intoxicated drivers leaving the Lake of the Ozarks.[2] Moehle observed Miller's vehicle and he followed her for approximately ten

---

[2] It is unclear to the Court whether Highway 5 is a route frequented by intoxicated drivers on a week night. For purposes of this Summary Judgment Motion, based on the record currently

miles before pulling her over.  During that time, Moehle alleges that he observed Miller driving 70 mph in a 50 mph zone, although she slowed down to approximately 25 mph after Moehle's vehicle approached her vehicle on the Highway.  Viewing the facts in favor of Miller, the non-movant, Moehle approached Miller's car rapidly on a number of occasions and tailgated her before stopping her.  This erratic driving pattern caused Miller to slow down.  Moehle also claims that he saw Miller's tire touch and cross the fog line.  Miller denies that she was speeding and denies that she committed any other traffic violation.

Moehle pulled Miller over on Highway 5 at approximately Lake Road 5-35.  Moehle approached the car and asked Miller to roll down her window.  Miller refused to roll down her window the entire way; instead, she rolled it down six inches so that she could hear Moehle.  Miller continued to refuse to roll down her window and she repeatedly asked the officer what probable cause he had for initiating the stop.  Moehle responded that he observed Miller crossing the fog lines.  Miller also requested to see Moehle's law enforcement credentials and he displayed his badge to her through the window.  Nonetheless, Miller expressed that she was not sure he was a law enforcement officer.

Moehle called for reinforcement from Simms, who was his supervising officer on duty at the time.  The transcript of Moehle's dispatch to Simms states:

---

before the Court, the Court assumes that it is.

> Okay, simple traffic stop, this lady is going ballistic. She doesn't believe I am a law enforcement officer, she doesn't believe that she needs to be pulled over, she won't roll down her window, she won't get off her cell phone, she is pretty combative. So if you wouldn't mind coming up here and explaining to her exactly who I am, I guess she thinks I am a fraud.

*See* Def. Ex. F. Simms eventually arrived at the scene, as did a police officer from a neighboring town who also heard Moehle's dispatch. Simms arrived in uniform in a marked police vehicle and he showed Miller his badge and referred to her by name. Miller recognized Simms from the time that he previously pulled her over.

Simms continued to request that Miller roll down her window and display her driver's license. Miller displayed her driver's license by leaving it in her wallet and pressing it up against her window. Simms explained that they needed to actually see the identification and Miller refused to hand the driver's license out the window to the officers.

Eventually Simms told Miller that she needed to exit the vehicle or she would be placed under arrest. Miller continued to refuse to exit the vehicle or roll down her window. Simms advised Miller she was under arrest, that she was resisting arrest, and, if necessary, that he would break her vehicle's window to remove her from the vehicle. Miller continued to refuse to exit the vehicle and Simms broke her window and the officers forcibly removed her from the vehicle. Miller was taken to the ground by the officers, handcuffed, and transported to the jail.

Miller states that it was unnecessary for the officers to forcibly remove her from the vehicle because she offered to leave the vehicle voluntarily after they broke her

5

window. Miller also states that the officers touched her inappropriately as they were executing the arrest.

After the arrest, Moehle and Simms did not conduct an inventory search of Miller's vehicle. They conducted a cursory review for weapons and the vehicle was then towed away by a private towing contractor. The next day, Miller filed a report indicating that personal items and cash had been removed from her vehicle.[3] The officers deny that they removed any items from Miller's vehicle.

Miller was charged with traffic violations for failing to yield to an emergency vehicle and speeding, as well as resisting or interfering with arrest. In December 2004, Miller was acquitted by a jury of the underlying traffic offenses, but convicted of the resisting arrest charge and sentenced to six months of imprisonment. Miller's conviction and sentence were affirmed in August 2005.

### 2. Telephone Call

At the commencement of the stop and arrest, Miller initiated a telephone call to her friend, Terry Woolworth ("Woolworth"). Woolworth began taping the telephone call and Defendants have submitted the transcript of that call to the Court. The transcript reflects Miller repeatedly demanding to know the probable cause that Moehle had for initiating the stop. It also reflects Miller questioning Moehle about why he waited so long to pull her over. Miller relayed Moehle's name and badge number to Woolworth. At one point,

---

[3]Miller alleges the officers removed drug prescription forms, medical supplies and equipment, and cash from her vehicle. *See* Pl. Brief [Doc. # 63] at p. 10 ¶ (g).

6

Case 2:04-cv-04198-NKL   Document 84   Filed 12/28/05   Page 6 of 20

Woolworth advised Miller to "[m]ake sure the doors are all locked so they can't get in" and Miller responded, "I did." *See* Def. Ex. E at p. 2. Miller also conveyed to Woolworth that the officers were instructing her to hang up her cell phone and roll down the window. Woolworth hung up with Miller and called a mutual friend to obtain his advice.

A few minutes later and after the intervening phone call with their friend, Woolworth called Miller again. The transcript reflects that Miller recognized Simms and that she continued to refuse to remove her driver's license and hand it to the officers or roll down the window. Miller refused to step out of the vehicle and protested when one of the officers told her she was under arrest. Miller's comments also reflect that she knew the officers were going to break the window if she did not exit the vehicle and that she continued to refuse to exit the vehicle. Toward the end of the transcript, there is a male voice instructing Miller to stop resisting as she repeatedly tells him, "Just a minute." *Id.* at p. 8. At this point, someone hung up the cell phone and the transcript ends.

### C.  Miller's Allegations

In her brief, Miller identifies her constitutional deprivations as follows: (1) the officers obtained the approval of Page "to periodically harass and intimidate her . . . as she made her way on her regular trips through Camden County;" (2) her stop and detention on August 28, 2002; (3) the forcible breaking of her window; (4) the forcible removal of Miller from her vehicle, including their physical attacks on her after she exited the vehicle; (5) Defendants' refusal to allow Miller to call an attorney or make bail; (6)

7

verbal abuse of Miller during her incarceration; (7) the removal of the items from her vehicle; (8) the refusal to allow Miller to obtain medical treatment for her injuries;[4] and (9) Page's false statement to a newspaper reporter that Miller had refused a breathalyzer test. *See* Pl. Brief [Doc. # 63] at p. 10.

Miller filed her Complaint in August 2004 [Doc. # 1]. Her Complaint alleges the following counts against the Defendants.

| Count | Claim | Defendants |
| --- | --- | --- |
| I | Unconstitutional search and seizure and use of excessive force in violation of 42 U.S.C. § 1983 ("Section 1983"). | Page<br>Simms<br>Moehle<br>West<br>Gumm<br>Camden County |
| II | Failure to instruct, control and discipline in violation of Section 1983. | Page<br>West<br>Gumm<br>Camden County |
| III | Assault and battery | Simms<br>Moehle |
| IV | False arrest/false imprisonment | Page<br>Simms<br>Moehle |
| V | Intentional infliction of emotional distress ("IIED") | Page<br>Simms<br>Moehle |

---

[4]Miller submits photographs of scrapes and bruises she allegedly incurred during the altercation with the officers after she was forcibly removed from the vehicle. *See* Pl. Ex. 45.

8

| VI | *Respondeat superior* claim for state tort law claims | Page<br>Simms<br>Moehle<br>West<br>Gumm<br>Camden County |

**II. Discussion**

    **A. Motion of Camden County Defendants [Doc. # 55]**

The Camden County Defendants move for summary judgment on Miller's claim contained in Count I of the Complaint. The Camden County Defendants do not address Counts II or VI or the allegations contained therein; therefore, the Court will not consider whether the Camden County Defendants are entitled to summary judgment on those counts and will instead focus on Count I.[5]

Individual county commissioners can be liable for constitutional deprivations only if they "speak with final policymaking authority for the local government actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue." *Jett v. Dallas Indep. School Dist.*, 491 U.S. 701, 737 (1989). Whether an individual has "final policymaking authority" is a question of state law. *City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988).

---

[5] Defendants' Motion does not specifically identify for which count(s) they seek summary judgment. However, given that Count I encompasses intentional constitutional violations, while Count II encompasses violations that derive from negligence, the Court cannot conclude that Defendants' argument regarding Count I also applies to Count II. Therefore, the Court will consider Defendants' Motion as relating only to Count I because of the lack of specificity in the Motion.

9

In her brief, Miller fails to aver any facts related specifically to the individual commissioners. She includes no written policies or evidence of other alleged constitutional deprivations mandated, authorized, or condoned by the county commissioners. In fact, it does not appear that Miller conducted any discovery related to the individual commissioners.

At best, Miller suggests that Sheriff Page is the final decision maker for the County and he condoned 1) a persistent pattern of unconstitutional conduct by his employees; or 2) he tacitly authorized his employees to engage in unconstitutional conduct.

Miller, however, has shown no persistent pattern of unconstitutional conduct by the Sheriff or his employees. Prior to August 2002, she was stopped on only one occasion, during a patrol for intoxicated drivers, and was released without incident. On two other occasions, deputies passed her on the road, not an unusual occurrence for drivers on a public highway. Furthermore, there is no evidence that Sheriff Page knew about all of these incidents identified by Miller. Thus, even if he was the final decision maker for the County, Sheriff Page's conduct does make the County liable.

Because there is no nexus between Camden County, the individual commissioners and Miller's constitutional grievances, no reasonable jury could infer that the Camden County Defendants are liable under Count I. Accordingly, the Court will grant the Motion of the Camden County Defendants.

      **B.**     **Motion of the Individual Defendants [Doc. # 54]**

### 1. *The Traffic Stop - Count I*

In her Complaint, Miller claims that Moehle's stop of her vehicle constituted an unlawful seizure in violation of the Fourth Amendment of the Constitution. In their Motion, Defendants claim that Moehle had sufficient probable cause to stop Miller's vehicle. Because there is a dispute of facts about the traffic stop, the Court denies Defendants' Motion as it relates to the traffic stop.

The decision to stop an automobile is reasonable where police have probable cause to believe that a traffic violation has occurred. *Whren v. United States*, 517 U.S. 806, 810 (1996). In determining whether probable cause existed, courts do not look to the subjective intent of the officer--only to the objective facts surrounding the stop. *Id.* at 813. *See also Johnson v. Crooks*, 326 F.3d 995, 998 (8th Cir. 2003) (citing *Conrod v. Davis*, 120 F.3d 92, 96 (8th Cir. 1997) (subjective intent of officer is irrelevant)). Whether an officer has sufficient probable cause to stop a vehicle is judged by the totality of the circumstances. *United States v. Amaya*, 52 F.3d 172, 174 (8th Cir. 1995) (citing *United States v. Brown*, 49 F.3d 1346, 1349-50 (8th Cir. 1995)).

Defendants move for summary judgment by arguing that Moehle had probable cause to stop Miller's vehicle because her tires crossed the fog lines, she was speeding, and she slowed down when Moehle's vehicle approached her vehicle from behind. [6]

---

[6] It is not clear whether Moehle, in his summary judgment motion, is actually claiming that he had probable cause to stop Miller because she was driving too slowly. At one point, he mentions her slow driving, but only discusses her speeding and crossing the fog line as the reason he stopped her. Out of an abundance of caution, the Court has considered all three allegations to determine whether summary judgment should be granted.

11

During her criminal trial and in these proceedings, Miller disputes the first two bases for pulling her over. Miller argues that her tires did not cross the fog lines and she denies that she was speeding. Thus, there are disputed issues of fact regarding the first two articulated bases for Moehle to initiate the stop of Miller and Defendants acknowledge this when they identify in their brief that Miller disputes these issues. *See* Def. Brief [Doc. # 51] at ¶ 6.

Regarding her slow driving, Miller conceded during her earlier criminal trial that she slowed down to twenty-five miles per hour in a zone with a posted speed limit of fifty miles per hour. *See* Def. Ex. C at p. 412:6-12. Slow driving may be an indicia of an impaired driver and it may support probable cause to stop a driver where the slow driving is observed in tandem with other traffic violations. *See United States v. Sanchez-Pena*, 336 F.3d 431 (5th Cir. 2003); *United States v. Christian*, 43 F.3d 527 (10th Cir. 1994); *United States v. Lopez-Martinez*, 25 F.3d 1481 (10th Cir. 1994). In this case, however, there is no undisputed evidence of Miller violating any traffic law.

Moreover, given the totality of the circumstances, a reasonable jury may determine that Miller's slow driving was justified and reasonable. Miller testified that she slowed down only after Moehle's vehicle approached her vehicle with his high-beam headlights on and tailgated her. *See* Def. Ex. C at p. 412:6-12. Miller further testified that Moehle's speed was erratic in that he would slow down but then rapidly approach her vehicle again. *Id.* at p. 413:17-24. Given that a strange vehicle was driving erratically on the highway at a late hour of the night, a reasonable jury may infer that it was reasonable for Miller to

12

slow down and drive with a heightened degree of caution and conclude that an objective law enforcement officer did not have probable cause to stop her under all these circumstances.

While Defendants are correct that Miller's subsequent acquittal of the underlying traffic offenses is not determinative of whether Moehle had objective probable cause to initiate the stop of her vehicle, *Kurtz v. City of Shrewsbury*, 245 F.3d 753, 757 (8th Cir. 2001) (citations omitted), her acquittal and the evidence produced at that trial, which is part of the record here, does demonstrate that there is a dispute about the facts surrounding the traffic stop, making summary judgment inappropriate.

Because there are disputed issues of fact, the Court denies Defendants' Motion as it relates to the traffic stop.

### 2. *Miller's Claim for False Arrest - Counts I and IV*

Defendants argue that Miller cannot sustain a civil claim for false arrest because she was criminally convicted of resisting arrest in the state court proceeding. As a general rule, an individual convicted of an offense cannot collaterally attack that conviction in a section 1983 proceeding. *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). However, Miller is not challenging her conviction for resisting arrest or seeking to have it invalidated; instead, she is arguing that her arrest that followed her traffic stop was not supported by the necessary probable cause. Thus, her claim for false arrest is independent and distinct from her conviction for resisting that arrest.

The Missouri statute that criminalizes resisting arrest, in fact, provides that

13

resisting arrest is independent of whether the underlying arrest is unlawful. The statute states: "It is no defense to a prosecution pursuant to . . . this section that the law enforcement officer was acting unlawfully in making the arrest. However, nothing in this section shall be construed to bar civil suits for unlawful arrest." Mo. Rev. Stat. § 575.150(4). Missouri courts recognize the same and hold that an individual can be convicted of resisting arrest even where the arrest is unlawful. *See State v. Merritt*, 805 S.W.2d 337 (Mo. Ct. App. 1991); *State v. Winkelmann*, 776 S.W.2d 44 (Mo. Ct. App. 1989). Thus, a defendant's conviction for resisting arrest is not tantamount to a finding that the arrest was lawful, and a civil judgment that the arrest was unlawful will not contradict or undermine a conviction for resisting arrest.

While *Heck v. Humphrey* does not control the disposition of Miller's false arrest claim, the Court concludes, based on the undisputed evidence in the record, that no reasonable jury could conclude that the Camden County deputies lacked probable cause to arrest Miller. After she was stopped by Moehle, Miller failed to obey the reasonable commands of Moehle in that she refused to end her telephone call with Woolworth, she refused to produce her driver's license, she refused to roll down her window, and she refused to exit her car. Miller's erratic behavior necessitated calling additional officers to the scene and ultimately breaking the window of her vehicle just to remove her. Miller's refusal to obey routine, lawful commands of law enforcement officers led to her arrest and no reasonable jury could find that the officers lacked probable cause to arrest her based on the undisputed evidence in the record. Therefore, the Court finds, as a matter of

14

law, that there was probable cause to arrest her.

### 3. Breaking Miller's Window - Count I

Defendants also move for summary judgment on Miller's claim for excessive force to the extent that her claim is predicated on the officers breaking her vehicle's window. Defendants do not move for summary judgment on Miller's claim for excessive force as it relates to her removal from the vehicle or her treatment thereafter.

Claims of excessive use of force by law enforcement are to be analyzed under Fourth Amendment reasonableness standards. *McVay ex rel. Estate of McVay v. Sisters of Mercy Health System*, 399 F.3d 904, 908 (8th Cir. 2005). In evaluating reasonableness, courts consider "whether the officers' actions [were] 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to [the officers'] underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989).

In *Winters v. Adams*, the Eighth Circuit found that officers acted "objectively reasonable" when they smashed the window of a vehicle where the occupant rolled up his windows, locked the doors, and refused to exit the vehicle. 254 F.3d 758 (8th Cir. 2001). In finding that the officers did not deprive the occupant of his constitutional rights, the court noted that the occupant acted erratically and unusually so as to warrant the intrusion into the vehicle.

Similarly, Miller failed to appropriately respond to the officers' request that she roll down her window and show her driver's license. She also refused to exit the car, even after additional law enforcement arrived on the scene and she recognized at least one

15

of them to be a Camden County deputy. Given that Miller was not cooperating with the officers, it was not unreasonable for them to break the window of her vehicle to extract her from it. Based on her brief, it does not appear that Miller disputes the point. Instead, she appears to argue that Defendants used excessive force in extracting her from the vehicle and placing her under arrest. This conduct, however, is not the subject of Defendants' pending Motion. Accordingly, the Court will grant Defendants' Motion as it relates to their decision to break Miller's windows.

### *4.     Miller's Claim for Lost Property - Count I*

Miller alleges that Moehle and Simms either wrongfully removed items from her vehicle after her arrest or, alternatively, they failed to protect those items from removal. Miller does not state the constitutional basis for her section 1983 claim in Count I, but the Court assumes the claim is pursued as a due process violation because courts normally analyze a claimant's loss of property under the rubric of a due process claim, and Miller has not asserted any alternative. *See Parratt v. Taylor*, 451 U.S. 527 (1981) (analyzing an inmate's loss of property claim under a due process framework); *Hudson v. Palmer*, 468 U.S. 517 (1984) (same).

Regardless of the legal theory for Miller's claim, she must first invoke state remedies for post-deprivation relief before she can pursue her property claim under section 1983. In *Parratt v. Taylor*, a prison inmate filed a section 1983 claim because his mail order hobby materials were lost when the prison did not follow its normal procedure

16

for receiving mail packages on behalf of inmates. 451 U.S. at 543.[7] The Court rejected the inmate's section 1983 claim because he failed to use a state statute that allowed individuals to seek redress in state court for losses from tortious conduct. *Id.* Similarly, in *Hudson*, the Court relied on *Parratt* and rejected an inmate's due process claim for destruction of his legal papers. 468 U.S. at 534. The Court in *Hudson* also noted that the rule espoused in *Parratt* extended to both negligent and intentional deprivations of property.

Missouri has a statutory remedy for Miller's property loss claims. Specifically, Missouri courts authorize claimants to file replevin actions in common law to recover property that was wrongfully seized from them. *See Castelli v. City of Bridgeton*, 792 S.W.2d 909 (Mo. Ct. App. 1990); *Elam v. Dawson*, 156 S.W.3d 807 (Mo. Ct. App. 2005).

Because Miller has not availed herself of the available state remedy for getting her property back, the Court will grant Defendants' Motion as it relates to Miller's claim for her lost property.

### 5. *Page's Comment About Miller - Count I*

Defendants also move for summary judgment on Miller's claim for damages based on Page's alleged statement to a newspaper reporter that Miller refused to take a breathalyzer test.

Injury to reputation alone does not rise to the level of a constitutional violation that

---

[7]An unrelated portion of *Parratt* was subsequently overturned on other grounds. *See Daniels v. Williams*, 474 U.S. 327 (1986).

17

supports a section 1983 claim. *Gunderson v. Schlueter*, 904 F.2d 407, 409 n. 4 (8th Cir. 1990). Indeed, an individual does not have a property or liberty interest in the individual's reputation. *Paul v. Davis*, 424 U.S. 693, 712 (1976).

Miller does not refute or contest these general maxims of constitutional law. Instead, she argues that "[t]he information was false and clearly relevant to Plaintiff's damages and to the issue of credibility, bias, and motive of the Defendants." *See* Pl. Brief [Doc. # 63] at p. 19. Miller's argument misses the mark in that Defendants are not seeking to exclude the newspaper report from evidence but rather they are seeking to eliminate it as a basis for imposing liability.

Accordingly, the Court will grant Defendants' Motion as it relates to Page's statement to the press. That does not mean that the statement is inadmissible in evidence.

### 6. *Miller's Allegations of Harassment*

Finally, Defendants move for summary judgment on Miller's claim that she was harassed and intimidated by the Defendants. Generally, threats or harassment do not rise to the level of a constitutional violation unless it is so brutal and wanton that it shocks the conscience and results in a deprivation of constitutional rights. *King v. Olmsted County*, 117 F.3d 1065, 1067 (8th Cir. 1997). The court stated, "'The Constitution does not protect against all intrusions on one's peace of mind. Fear or emotional injury which results solely from verbal harassment or idle threats is generally not sufficient to constitute an invasion of an identified liberty interest.'" *Id.* (citation omitted).

In her brief, Miller claims that the officers' harassing comments were:

- [Miller] better hope she does not come through the county when I am on duty.

- You're a moron.

- I'll make sure you have a record for your whole life.

- The Sheriff isn't going to be happy with you.

*See* Pl. Brief [Doc. # 63] at p. 20. A reasonable jury could not find that these statements shock the conscience and rise to the level of a constitutional violation. The first comment was never made to Miller--instead it was overheard by Burge who worked with the officers. The three remaining comments, although offensive, unprofessional and disturbing, do not rise to the level of an independent constitutional deprivation--in part because they did not threaten physical harm or other specific injury.

Similarly, a reasonable jury could not find that the officers' conduct prior to August 2002 constitutes a deprivation of constitutionally-guaranteed rights. Miller was followed once but the officer passed her and pulled over another vehicle. Another time she was allegedly followed but the officer did a u-turn and did not pursue her. Subsequently, Miller was pulled over by Simms and he gave her a warning without incident. Miller has failed to show how this conduct is tantamount to an independent constitutional violation. Accordingly, the Court will grant Defendants' Motion on Miller's claim for harassment based on these incidents.

**III. Conclusion**

Accordingly, it is hereby

(1) ORDERED that the Camden County Defendants' Motion for Summary Judgment [Doc. # 55] is GRANTED, and

(2) ORDERED that the Individual Defendants' Motion for Summary Judgment [Doc. # 54] is GRANTED, except as it relates to the issue of probable cause for the traffic stop on August 28, 2002.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

DATE: December 28, 2005
Jefferson City, Missouri